IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY SHEARER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-895-L |
| | § | |
| GREGORY CERASO, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Timothy Shearer, through counsel, filed a civil rights complaint under 42 U.S.C. § 1983 against three Dallas police officers (Defendants Gregory Ceraso, Christopher Wagner, and Ashley Rios) alleging that Wagner and Rios illegally detained him and that Ceraso used excessive force against him, all in violation of the Fourth Amendment. *See* Dkt. No. 1.

Rios and Wagner moved to dismiss the illegal detention claim under Federal Rule of Civil Procedure 12(b)(6), arguing that the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* Dkt. No. 15. United States District Judge Sam A. Lindsay referred the motion to dismiss to the undersigned United States magistrate judge for hearing, if necessary, and submission of proposed findings and recommendations. *See* Dkt. No. 17. Shearer then responded. *See* Dkt. No. 18. And Wagner and Rios replied. *See* Dkt. No. 19.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny the motion to dismiss.

## Applicable Background

Considering the allegations in the complaint and the applicable state court record, as a matter of public record of which the Court may take judicial notice, *see State v. Shearer*, M2055197 (Cnty. Crim. Ct. No. 4, Dall. Cnty., Tex.); *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (per curiam) (under Federal Rule of Evidence 201, a district court may "take judicial notice of the state court's orders, final judgment, and docket as matters of public record attached to the motion to dismiss" (citations omitted)), on the morning of May 3, 2020, Rios and Wagner arrested Shearer at 4919 W. Davis Street in Dallas, *see* Dkt. No. 1, ¶¶ 11-36.

While Shearer alleges that Rios and Wagner illegally detained him in violation of the Fourth Amendment on May 3, *see id.*, ¶¶ 86-106, Shearer was also charged with the misdemeanor offense of evading arrest/detention based on the same conduct, *see, e.g.*, Dkt. No. 15-1 at 2.

And, on the motion of the Dallas County District Attorney, providing that "Defendant has completed the conditions per the agreement," the court dismissed this misdemeanor criminal proceeding on May 19, 2021, Dkt. No. 15-1 at 4.

Rios and Wagner argue that this dismissal is equivalent to a conviction under *Heck*, so the Court should dismiss the civil claim based on the same conduct. While Shearer, relying on *Thompson v. Clark*, 142 S. Ct. 1332 (2022), argues that this civil claim is not barred under *Heck* because the United States Supreme Court recently held that a plaintiff need only show that a criminal prosecution ended without a conviction.

## Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

And "[a] complaint fails to state a claim where it demands relief barred by *Heck v. Humphrey*." *Ray v. Recovery Healthcare Corp.*, No. 22-10303, 2022 WL 16945898, at *2 (5th Cir. Nov. 15, 2022) (per curiam) (citing *Crittindon v. LeBlanc*, 37 F.4th 177, 190 (5th Cir. 2022) ("When it comes to *Heck* in particular, our court and others have recognized that it is a defense a party must assert as opposed to some sort of jurisdictional bar." (footnote omitted))).

"In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (per curiam) (citing *Heck*, 512 U.S. at 486-87).

"That is because 'civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.'" *Ray*, 2022 WL 16945898, at *2 (quoting *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021) (quoting, in turn, *Heck*, 512 U.S. at 486)). Put differently, "*Heck* does not allow a civil rights lawsuit to be an alternative vehicle for to a criminal case for challenging law enforcement decisions that resulted in arrest or prosecution unless the criminal case was resolved 'in favor

of the accused.'" *Morris v. Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019) (quoting *Heck*, 512 U.S. at 484).

## Analysis

The undersigned begins by addressing Shearer's response: that *Thompson* "clarified" the rule in *Heck* insofar as, to demonstrate that his criminal case was resolved in his favor, "a plaintiff need only show that the criminal prosecution ended without a conviction." Dkt. No. 18 at 2 (citing *Thompson*, 142 S. Ct. at 1341).

While the decisions in *Thompson* (the majority and the dissent) cite *Heck*, *Thompson* was not a case about *Heck*. "The narrow dispute in" *Thompson* instead concerned "one element of the Fourth Amendment claim under § 1983 for malicious prosecution" – "a favorable termination of the underlying criminal prosecution." *Thompson*, 142 S. Ct. at 1337, 1338.

True, *Heck*'s requirement that a conviction or sentence be reversed, invalidated, or otherwise set aside "is sometimes called the 'favorable termination' exception," *Ray*, 2022 WL 16945898, at *2 (citing *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006)) – an "understandable" characterization, "given that the *Heck* bar was fashioned from legal principles underlying malicious prosecution claims," *Haven v. Dickerson*, Civ. A. No. H-09-647, 2010 WL 11652408, at *8 n.75 (S.D. Tex. Oct. 26, 2010) (citing *Heck*, 512 U.S. at 484), *rec. adopted*, 2010 WL 11652395 (S.D. Tex. Nov. 16, 2010).

But "the *Heck* court did not require favorable termination as a precondition for bringing a Section 1983 suit, only that the conviction or sentence has been

invalidated." *Id.* (citing *Heck*, 512 U.S. at 487); *see, e.g.*, *Ray*, 2022 WL 16945898, at \*2 ("<u>Plaintiffs can demonstrate favorable termination by</u>, *inter alia*, 'prov[ing] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" (emphasis added; quoting *Heck*, 512 U.S. at 486-87)).[1]

In sum, *Thompson* is best understood as limited to malicious prosecution claims under Section 1983. *See Thompson*, 142 S. Ct. at 1337; *Ray*, 2022 WL 16945898, at \*4. But, if extended outside that context, *Thompson* still does not apply where a plaintiff's "prosecution ended in a conviction for the purposes of *Heck*" that has not been invalidated. *Garig v. Travis*, Civ. A. No. 20-654-JWD-RLB, 2022 WL 2962958, at \*7 (M.D. La. July 11, 2022), *rec. adopted*, 2022 WL 2961886 (M.D. La. July 26, 2022); *see also Ray*, 2022 WL 16945898, at \*4.

So the Court must decide whether the disposition of Shearer's evading arrest/detention prosecution on the motion of the Dallas County District Attorney providing that "Defendant has completed the conditions per the agreement," Dkt. No. 15-1 at 4, counts as "a conviction for the purposes of *Heck*."

Helpfully, a panel of the United State Court of Appeals for the Fifth Circuit

---

[1] *See also Ballard*, 444 F.3d at 396 ("'*Heck* requires the district court to consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."' This requirement or limitation has become known as the 'favorable termination rule.'" (citations omitted)).

recently reviewed its precedent in this regard:

> Although we have yet to articulate a definitive test for when a judicial action constitutes a "conviction or sentence" under *Heck*, we have created some guidelines. In *DeLeon v. City of Corpus Christi*, for example, we held that "a deferred adjudication in Texas is a 'sentence or conviction' for the purposes of *Heck*." 488 F.3d 649, 652 (5th Cir. 2007). In *Jackson v. Vannoy*, we held that *Heck* barred claims that would imply the invalidity of a successful parole revocation proceeding. 49 F.3d 175, 177 (5th Cir. 1995) (per curiam). And in *Morris v. Mekdessie*, we applied *Heck* to bar claims that would invalidate the defendant's participation in a pretrial diversion program. 768 F. App'x 299, 300-01 (5th Cir. 2019). The results in *DeLeon*, *Jackson*, and *Morris* were all required by *Heck*'s protection of the "finality and consistency" of criminal judgments from undue "collateral attack." *Heck*, 512 U.S. at 484-85.
>
> *DeLeon* is particularly instructive. Although a deferred adjudication order is not considered a "conviction or sentence" under state law, we nevertheless decided that *Heck* barred DeLeon's civil claims. *See DeLeon*, 488 F.3d at 656 ("[A]lthough the Texas courts have in all circumstances held that these orders are not convictions, ... [w]e conclude that a deferred adjudication order is a conviction for the purposes of *Heck*."). We did so to vindicate the concerns that animated *Heck* – namely, that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. We found compelling the fact that the deferred adjudication order bore important similarities to sentences and convictions. Namely, the deferred adjudication order was (1) a "final judicial act," (2) preceded by a "judicial finding that the evidence substantiates the defendant's guilt," and (3) accompanied by probation conditions that resemble the consequences of a conviction or sentence. *DeLeon*, [488 F.3d at] 655-56. Allowing *DeLeon* to "attack" his deferred adjudication order via § 1983 would undermine *Heck* and its "concerns for finality and consistency." *Heck*, 512 U.S. at 484-85.

*Ray*, 2022 WL 16945898, at \*2-\*3. *But see DeLeon*, 488 F.3d at 656 (refusing to "decide whether a successfully completed deferred adjudication, with its more limited collateral consequences under Texas law, is also a conviction for the purposes of *Heck*" (footnote omitted)).

Here, Rios and Wagner appear to characterize Shearer's applicable criminal misdemeanor prosecution as dismissed under a pretrial diversion agreement. *See*

Dkt. No. 15 at 5-6. Shearer does not dispute this characterization. *See generally* Dkt. No. 18. And, as set out above, the Fifth Circuit has "applied *Heck* to bar claims that would invalidate the defendant's participation in a pretrial diversion program." *Ray*, 2022 WL 16945898, at *2 (citing *Morris*, 768 F. App'x at 300-01).

> Such a program
>
> is essentially a middle ground between conviction and exoneration. Even though it is not a guilty plea, defendants entering diversion programs "acknowledge responsibility for their actions." As such, "[e]ntering a pretrial diversion agreement does not terminate the criminal action in favor of the criminal defendant…."

*Morris*, 768 F. App'x at 301 (citations omitted).

But, as the decision acknowledges, *Morris*, as an unpublished case issued after January 1, 1996, is not precedent. *See* 5TH CIR. R. 47.5. More importantly, *Morris*, decided on appeal from the Eastern District of Louisiana, did not consider Texas's pretrial diversion scheme[2] – or examine that scheme considering the factors identified in *DeLeon*. And at least one federal district court in Texas has held that pretrial diversion in Texas does not count as "a conviction for the purposes of *Heck*."

> In Texas, the State and a criminal defendant may enter into a written agreement pursuant to which the "State agrees to dismiss the case if the defendant performs certain conditions within a specified period of time." Known as a pre-trial diversion agreement, this arrangement requires a continuance of the trial to a future date in order to allow the defendant time to comply with the prescribed conditions. If the defendant successfully has fulfilled the conditions by the new trial date, the trial court grants the State's motion to dismiss the pending

---

[2] *Cf. Lail v. Caesar*, No. 2:21-cv-148, 2022 WL 672164, at *4-*5 (E.D. Va. Mar. 7, 2022) (recounting other federal courts examining the unique characteristics of each state criminal disposition program (Texas deferred adjudication; Maryland probation before judgment (PBJ) disposition program; and West Virginia's pretrial diversion agreement statute)).

> charges; if not, the case proceeds to trial.
> Significantly, a pre-trial diversion agreement is entered into prior to the court's hearing any evidence and, if completed by the defendant, renders a trial unnecessary. In these respects, a pre-trial diversion agreement differs from probation and deferred adjudication programs.
> Pretrial diversion is precisely what occurred here. Plaintiff agreed to complete a prescribed number of community service hours in exchange for dismissal of the charge. The court did not hear evidence, and the case did not proceed to trial. Plaintiff was not convicted. The hours of community service were not a sentence based on a conviction, but, rather, were conditions upon which the prosecutor based the decision whether to dismiss the charge.

*Haven*, 2010 WL 11652408, at \*7-\*8 (quoting then citing *Fisher v. Texas*, 832 S.W.2d 641, 643, 644 (Tex. App. – Corpus Christi 1992, no pet.)); *see also Ex parte Garcia*, No. 13-18-00607-CR, 2021 WL 6014664, at \*9 (Tex. App. – Corpus Christi Dec. 21, 2021, pet. ref'd) ("[T]raditionally, pretrial diversion, unlike community supervision, does not require a finding of guilt on the record. *See [Fisher*, 832 S.W.2d at 643-44] ('A pre-trial diversion agreement is entered into before the court hears any evidence, not after.'); *see also Lee v. State*, 560 S.W.3d 768, 772-73 (Tex. App. – Eastland 2018, pet. ref'd) (observing that pretrial diversion, unlike deferred adjudication, has 'no requirement that it be offered only after a finding of guilt'); *State v. McNutt*, 405 S.W.3d 156, 159 (Tex. App. – Houston [1st Dist.] 2013, pet. ref'd); *compare* TEX. CODE CRIM. PROC. ANN. art. 42A.101 (permitting a trial court to place a defendant on deferred adjudication community supervision 'after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt') *with* TEX. GOV'T CODE ANN. § 76.011 (containing no obligatory plea language for pretrial diversion programs).").

So, considering the *DeLeon* factors, it appears that Texas pretrial diversion is

neither "preceded by a 'judicial finding that the evidence substantiates the defendant's guilt'" nor "accompanied by probation conditions that resemble the consequences of a conviction or sentence." *Ray*, 2022 WL 16945898 (quoting *DeLeon*, 488 F.3d at 655-56); *see also Lee*, 560 S.W.3d at 773 ("Texas courts have repeatedly held that a defendant does not have a right to participate in pretrial intervention and that the judiciary has no power to require the State to place a defendant on pretrial intervention. For the same reason, we hold that a court does not have authority to require the State to keep a defendant on pretrial intervention after the State determines that a defendant has violated the agreement." (citation omitted)).

Stepping back, recall that *Heck* "is a defense a party must assert." *Crittindon*, 37 F.4th at 190. And Rios and Wagner are currently asserting that defense through a Rule 12(b)(6) motion to dismiss, under which the Court cannot look beyond the pleadings except to take judicial notice under Federal Rule of Evidence 201. *See Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Under these standards and for the reasons set out above, the undersigned finds that Rios and Wagner have not carried their burden to show that the dismissal of Shearer's evading arrest/detention prosecution on the motion of the Dallas County District Attorney providing that "Defendant has completed the conditions per the agreement," Dkt. No. 15-1 at 4, counts as "a conviction for the purposes of *Heck*"

where they rely on that court order alone without further explanation of the state court's disposition of the prosecution and where the state court record of which the Court may take judicial notice offers no further explanation.

The Court should therefore deny the motion to dismiss without prejudice to the *Heck* defense being reasserted later in this proceeding, including through a motion for summary judgment.

## Recommendation

The Court should deny Defendants Christopher Wagner and Ashley Rios's motion to dismiss the illegal detention claim under Federal Rule of Civil Procedure 12(b)(6) because that claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) [Dkt. No. 15].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 16, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE